# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL DOCKET NO. 5:14-CV-143

| | |
|---|---|
| QUEEN CITY PASTRY, LLC,<br>    Plaintiff,<br><br>v.<br><br><br>BAKERY TECHNOLOGY<br>ENTERPRISES, LLC,<br>    Defendant. | **MEMORANDUM AND ORDER** |

**THIS MATTER** is before the Court upon the Defendant's motion to dismiss pursuant to Rule 12(b)(3) and alternative motion for transfer of venue, filed October 6, 2014. (Doc. 5).

Under Rule 12(b)(3), the Court views the facts in the light most favorable to the Plaintiff. *See Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1138-39 (9th Cir. 2003).* It is appropriate for the Court to consider matters outside the pleadings (*e.g.*, affidavits, declarations, etc.) since Defendant does not move for dismissal pursuant to rule 12(b)(6) or 12(c). *See* FED. R. CIV. P. 12(d).

### I. Nature Of Case

On April 12, 2011, Plaintiff Queen City Pastry, LLC (Queen City), a "commercial baking enterprise that bakes high quality cakes, pastries and other desert items" entered into a written commercial sales contract ("Agreement") with Defendant Bakery Technology Enterprises, LLC ("Bakery Technology"), pursuant to which Bakery Technology was to provide Queen City with an "automated cake line for high quality specialty cake baking." (Compl.).

Bakery Technology is a company that custom builds commercial baking equipment. Bakery Technology "is a single-member limited liability company formed in New Mexico; registered to do business in Tennessee; and with its principal and only location in Columbia Tennessee." (Doc. 6).

Queen City and Bakery Technology entered into the Agreement on June 8, 2011. Prior to the Agreement, agents of Bakery Technology went to Queen City's baking facility in Mooresville, North Carolina to inspect and assess Queen City's operations and discuss Queen City's desire to upgrade its baking equipment in order to increase the efficiency and productivity of its baking operations. (Doc. 11). Following negotiations and discussion between Anwar Husein ("Husein"), a member-manager of Queen City, and Dino Roberts ("Roberts"), Vice President of Bakery Technology, Roberts provided Husein with the Proposal Quotation for Automated Cake Line ("Proposal Quotation"). (Doc. 6 / Exh. A – Proposal). On January 6, 2011, Husein informed Roberts that he needed a more detailed agreement in order to secure financing for the purchase of the equipment. (Exh. B – Christopher Roberts' Aff., 1). To provide such detail, Roberts provided Husein with the General Terms and Conditions ("Terms") along with the Proposal Quotation. (Doc. 6 / Exh. B – Christopher Roberts' Aff., 5). The Proposal Quotation, the Terms, and a number of drawings of the equipment for which the parties contracted were submitted to Husein as the Proposal. (Doc. 6 / Exh. B – Christopher Roberts' Aff., 3). Husein eventually signed the April 12, 2011 version of the Proposal on June 8, 2011.

The Terms included the following language with regard to choice of law and forum selection:

> 4. The rights and liability of the parties with respect to any transaction covered by these General Terms and Conditions shall be governed by the laws of the State of Tennessee and United States as applicable.
>
> 5. The parties agree that exclusive jurisdiction and venue for a lawsuit shall be in the Maury County Circuit Court and in no other place. BUYER hereby specifically consents to jurisdiction of such Court.

The Terms document was included in each revised Proposal thereafter, including the Proposal dated April 12, 2011. According to Roberts, the entire compilation of documents, including the Proposal Quotations and the Terms, ultimately became the Agreement.[1] (Christopher Roberts' Aff., 2).

The Proposed Agreement was sent as one document in one electronic file to Husein through email, and as one complete hard copy document through FedEx. (Doc. 15). Additionally, the pages of the Agreement are consecutively paginated and contain the same header ("PROPOSAL #2011-03-003"), the same Bakery Technology letterhead, and the same footer providing the same contact information for Bakery Technology. *Id.*

However, the Proposed Agreement contained separate signature lines following the Proposal Quotation and the Terms. (Doc. 11). On June 8, 2011, Husein signed page seven of the version of the Proposed Agreement sent to him in April 2011. The signature line read: "Accepted this ____ day of April, 2011." (Doc. 11). Husein drew a line through the word "April" and wrote "June" and the day ("8") in his own handwriting and subsequently returned the signature page (as opposed to the entire document) to Roberts. The parties do not explain why there was nearly a two month delay in execution of the Proposed Agreement. Husein never signed nor returned the

---

[1] For purposes of the instant Memorandum and Order, the compilation of documents is referred to herein as the "Proposed Agreement."

signature page located on page fifteen of the Proposed Agreement following the Terms. (Doc. 11). Husein made no mention or objection regarding the Terms to Roberts. (Doc 15).

After Bakery Technology began delivering equipment to Queen City's facility, Queen City alleged the oven that Bakery Technology specified, sold, and delivered was not designed for baking cakes, but rather for baking cookies and crackers. (Doc. 11). Queen City then filed suit in Iredell County Superior Court on July 30, 2014 alleging: breach of contract; fraud and misrepresentation; and unfair or deceptive trade practices. (Doc 11).

After being served with the Summons and Complaint, Bakery Technology filed a Notice of Removal of this matter to this Court. (Doc. 11). Defendant's Removal was based upon the diversity of citizenship. *See* 28 U.S.C. § 1332. Upon removal, Bakery Technology filed the instant Motion to Dismiss and alternative Motion to Transfer Venue. (Doc. 5). Bakery Technology seeks dismissal under Rule 12(b)(3) in light of the forum-selection clause providing for exclusive jurisdiction and venue in the Maury County Circuit Court. (Doc. 5). Alternatively, Bakery Technology seeks transfer to the United States District Court for the Middle District of Tennessee based upon the same forum selection clause. (Doc. 5).

Plaintiff filed a response to Defendant's motions on November 3, 2014. (Doc. 11, 12, and 13).

These matters are now fully briefed and ripe for disposition.

**II.     Discussion**

**A. The Forum-Selection Clause Contained Within The Agreement Was Accepted By Queen City.**

Queen City argues that though the Proposal Quotation was signed and accepted by Husein, the Terms were not accepted since Husein did not sign the signature line following the Terms. Queen City's argument fails because the Proposal Quotation and the Terms comprise a single document, the Agreement, which was signed and accepted by Queen City.

Before reaching Queen City's argument that the Terms, and thus the forum-selection clause, were not included in the Agreement, it is necessary to first decide whether federal law or the body of law specified in the choice-of-law clause governs. A crucial distinction exists between the interpretation of a forum selection clause and the enforcement of such a clause. *See Martinez v. Bloomberg, LP*, 740 F.3d 211, 217 (2014). "[T]he body of law selected in an otherwise valid choice-of-law clause" governs the interpretation of a forum-selection clause. *Id.* at 218. Federal law governs the enforcement of a forum-selection clause. *Id.* However, "when the resolution of a choice-of-law determination would not alter the disposition of a legal question, a reviewing court need not decide which body of law controls. *Caper Corp. v. Wells Fargo Bank, N.A.*, 2014 WL 3511928 (4th Cir. 2014) (citing *Okmyansky v. Herbalife Int'l of Am., Inc.*, 415 F.3d 154, 158 (1st Cir. 2005).

Here, the forum-selection clause points to Tennessee law as governing. (Exh. B, 15) However, because the approach to examining the contract is the same under either Tennessee's or North Carolina's jurisprudence and will not affect the outcome of the case, we will analyze the contract under North Carolina law. *See Springfield Tobacco Redryers Corp. v. City of Springfield*, 41 Tenn. App. 254, 272 (Tenn. Ct. App. 1956) (recognizing that a contract may be made up of more than one document and the physical attachment of one paper to another can establish the connection between multiple documents sufficient to support the conclusion that they make up one

contract); see also *Wiles v. Mullinax*, 275 N.C. 473, 480 (1969) (stating that "[t]wo sheets, attached together as parts of a single communication, must of course, be construed as one document.").

Federal and North Carolina case law states that "in the absence of anything to indicate a contrary intention, instruments indicated at the same time, by the same contracting parties, for the same purpose, and in the course of the same transaction will be considered and construed together as one contract or instrument, even though they do not in terms refer to each other." *See e.g.*, *Encompass Advisors, Ltd.v. Unapen, Inc.*, 686 F.Supp.2d 607, 612 (W.D.N.C. 2009) (citing *Williston on Contracts* § 30:26) (finding a forum selection clause executed in a subsequent related agreement applicable to all aspects of the underlying transaction). Furthermore, North Carolina courts have unequivocally held that two sheets attached together are to be construed as a single document. *See Wiles*, 275 N.C. at 80. Thus, when terms and conditions are included as part of a proposal package sent to a buyer, they are properly considered part of the parties' contract. *See Kaplan v. RCA Corp.*, 783 F.2d 463, 465-66 (4th Cir. 1986) (holding that terms and conditions which were included with the proposal to buyer were part of the purchase contract).

Article 2 of the North Carolina Uniform Commercial Code (the "UCC") dictates that there must be both an offer and acceptance in order to form a contract for the sale of goods. N.C. Gen. Stat. § 25-2-101. Contrary to Queen City's argument, a contracting party is not required to expressly accept the terms and conditions presented as part of a sales contract. *Register.com Inc. v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir. 2004) (finding offeror's terms enforceable despite the party accepting the offer having no option to expressly agree to the subject terms and conditions). Rather, once an offer has been made, the general rule is that the offer may be accepted in any manner reasonable in the circumstances, unless the offer expressly states otherwise. *See* N.C. Gen. Stat. § 25-2-206. Furthermore, "it is standard contract doctrine that when a benefit is offered

subject to stated conditions, and the offeree makes a decision to take the benefit with knowledge of the terms of the offer, the taking constitutes an acceptance of the terms, which accordingly become binding on the offeree." *Id.* In the present case, the Proposal Quotation and the Terms together consisted of a single document which eventually became the Agreement, the April 2011 Proposal signed on June 8, 2011. Roberts sent the Proposal electronically and through FedEx to Husein as one document with consecutive pagination and consistent headings and footings throughout. Additionally, the Proposal Quotation and Terms were "indicated at the same time, by the same contracting parties, for the same purpose, and in the course of the same transaction", the sale and installation of the automated cake baking line to Queen City by Bakery Technology. *Encompass Advisors*, 686 F.Supp.2d at 612. Husein's request to Roberts that more specific terms be included in order for Queen City to secure financing supports the notion that both Roberts and Husein intended the Terms to constitute a crucial and necessary part of the Agreement. Thus, the Agreement was a single document consisting of both the Proposal Quotation and the Terms, which included the forum selection clause.

Because the Terms, and thus the forum selection clause, were a part of the Agreement, Queen City accepted and assented to the Terms when Husein signed page seven of the Agreement. It was not necessary that Hussein separately assent to the Terms by signing page fifteen of the Agreement. The benefit to Queen City, the automated cake baking line, was made "subject to . . . the following terms and conditions" which included the forum selection clause mandating that any lawsuit be brought in Maury County Circuit Court. (Exh. A, 9). Furthermore, despite Queen City's argument that the Proposed Agreement "expressly stat[es] the sole manner by which Plaintiff could accept each document—by signing on the appropriate signature line for the respective document to be accepted", a review of the Agreement contravenes Queen City's

argument.[2] Nowhere does the document expressly state that signing the appropriate signature line was the *sole* manner by which Queen City could accept Proposed Agreement. Signing page seven was appropriate. Therefore, when Husein signed page seven of the Agreement he accepted the benefit of the Agreement as well as the Terms made subject to that benefit. In short, Queen City accepted the Agreement as a whole, including the forum selection clause.

### B. The Forum-Selection Clause Contained Within The Agreement Is Valid And Enforceable.[3]

When the parties to a case have agreed to a valid forum selection clause, the "forum-selection clause should be given controlling weight in all but the most exceptional cases." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (KENNEDY, J., concurring). The Supreme Court in *Atlantic Marine* recently held that transfer pursuant to § 1404(a) is the prescribed enforcement mechanism of a forum-selection clause that "point[s] to a particular federal district." *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. Of Tex.*, 134 S.Ct. 568, 581 (2013). However, the doctrine of *forum non conveniens*, and not a Rule 12(b)(3) motion for improper venue, is the appropriate means for enforcement of a forum-selection clause that "point[s] to a state or foreign forum." *Id.* at 579–80.

The Supreme Court then set forth a modified version of the typical *forum non conveniens* analysis when the parties' contract contains a valid forum-selection clause. *See Atl. Marine. Const. Co.*, 134 S.Ct at 581–83. There are three distinct changes in the *forum non conveniens* calculus.

---

[2] See Doc 7-1, 7 (stating only "[b]y signing below you agree you have read the foregoing and are making an order for the above mentioned machinery.")
[3] Though state-law governs interpretation of the Agreement, federal law governs both motions to transfer venue, *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 28 (1998), and motions to dismiss for *forums non conveniens*, *see e.g., DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 793 (5th Cir. 2007).

*Id.* "First, the plaintiff's choice of forum merits no weight." *Id.* at 581. "Second, a court evaluating a defendant's § 1404(a) motion to transfer [or *forum non conveniens* motion to dismiss] based on a forum-selection clause should not consider arguments about the parties' private interests." *Id.* at 581–82. "Third, when a party bound by a forum-selection clause flouts its contractual obligations and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice of law rules – a factor that in some circumstances may affect public-interest considerations." *Id.* at 582 (internal citations omitted).

A forum selection clause is presumed to be valid and enforceable. *See Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 652 (4th Cir. 2010 (recognizing presumption of enforceability). Furthermore, under *Atlantic Marine*, the plaintiff bears the burden to show that dismissal of the complaint is unwarranted when a valid forum-selection clause exists. *See Atl. Marine. Const. Co.*, at 581.

In the present case, because Queen City defies the forum-selection clause, it bears the burden of establishing that transfer to the forum for which the parties bargain is unwarranted. *See Atl. Marine Const. Co.*, 134 S.Ct. at 581; *see also Giamettei v. Bertram Yacht, Inc.*, 2010 WL 2593612, at *3 (W.D.N.C. June 23, 2010). For the reasons more thoroughly explained by Bakery Technology in its papers, Queen City is unable to meet its burden. The *forum non coneveniens* analysis is modified in circumstances such as these, where a valid-forum selection clause is sought to be enforced. *Atl. Marine Const. Co.*, 134 S.Ct. at 581–83. As explained by the Supreme Court, factors ordinarily considered such as plaintiff's choice of forum and the private interests of parties carry no weight. *Id.* at 582. In addition, the original venue's choice-of-law rules do not apply. *Id.* Thus, one of the most significant public interest considerations in venue transfer analysis, choice-of-law, is negated by way of the forum-selection clause. *Id.* Finally, the nature of Queen City's

allegations against Bakery Technology fall squarely within the broad language of the contractual provision as Queen City's claim is "a lawsuit" arising out of "any transaction covered by these General Terms and Conditions." (Exh. B – Anwar Husein's Aff., 3). Consistent with the holding in *Atlantic Marine*, and the policies relied upon therein, the parties should be held to their bargain regarding forum selection in "all but the most unusual cases." *Id.* at 576. ("[W]e conclude, a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer.")

Under the applicable law, the Agreement's forum-selection clause's failure to point to a federal forum renders dismissal (rather than transfer) a proper remedy. *See Atl. Marine Const. Co.*, 134 S.Ct at 579, 583, n. 8 (Unlike a § 1404(a) motion, a successful motion under *forum non conveniens* requires dismissal of the case.") (citing *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955)). Given that this forum-selection clause is mandatory[4] and properly part of the Agreement, this Court will enforce the forum-selection clause and dismiss the case, as the Court lacks jurisdiction to transfer this case to "the Maury County Circuit Court."

**C. Dismissal for Improper Venue Pursuant to A Forum-Selection Clause Has Been Permitted After Removal.**

Though the district court in *American Ins. Marketing Corp. v. 5 Star Life Ins. Co.*, noted that the "Fourth Circuit has not squarely addressed this split of authority" as to whether "*Polizzi* applies where a defendant, after removal, seeks dismissal pursuant to a contractual forum selection

---

[4] A forum-selection clause "that specifically states the exclusive court of venue" is mandatory, and thus "provid[es] the designated forum with exclusive jurisdiction over any disputes." *Gita Sports Ltd. v. SG Sensortechnik GmbH & Co. KG,* 560 F.Supp.2d 432, 436 (W.D.N.C. 2008) (finding a forum-selection clause mandatory which stated that the "court of venue is Mörfelden–Walldor."). Here, the forum-selection clause in the Agreement is mandatory because it states that "*exclusive* jurisdiction and venue for a lawsuit shall be in the Maury County Circuit Court and *in no other place*." (Exh. B – Christopher Roberts' Aff., 10) (emphasis added).

clause", the Middle District of North Carolina recently allowed dismissal for improper venue after removal. 958 F.Supp.2d 609, 614 (D. Md. 2013); *see Polizzi v. Cowles Magazines, Inc.,* 345 U.S. 663, 666 (1953) (stating that "the proper venue of a removed action is 'the district court of the United States for the district and division embracing the place where such action is pending.'" (citing 28 U.S.C. §1441(a))); *see, e.g*, *Tufftworthy, LLC v. Dr. Karl Wetekam & Co. KG*, 2014 WL 2739280 (M.D.N.C., June 17, 2014). There, the defendant removed the action, originally filed by plaintiff in state court, to the Middle District of North Carolina. *Id.* at *1. The defendant then moved to dismiss the action based on improper venue pursuant to a valid forum-selection clause. *Id.* at *2. Ultimately, the Middle District permitted the dismissal of plaintiff's action on the basis of improper venue and upon finding the forum-selection clause agreed to by the parties was valid. *Id.* at *11.

Because the Fourth Circuit has not directly addressed the issue, and because, in certain circumstances, cases which have been removed may also be dismissed for improper venue pursuant to a valid forum-selection clause, it is within this Court's discretion and authority to dismiss Queen City's Complaint based on improper venue pursuant to the valid forum-selection clause in the Agreement. *See Albemarle Corp.*, 628 F.3d at 646 (affirming dismissal for improper venue based on a forum-selection clause after the action was removed by the defendant).

### III. Conclusion

For the reasons discussed above, the Court concludes that venue is improper.

### IV. Order

**IT IS, THEREFORE, ORDERED THAT:**

Defendant Bakery Technology's motion to dismiss is **GRANTED** and Bakery Technology's alternative motion for transfer is **DENIED**.

Signed: June 26, 2015

Richard L. Voorhees
United States District Judge